■Judge Nicholas
delivered the Opinion of the Court,
This suit was brought by Betty to establish her right to freedom. She claims it under the will of Jeremiah Morton, emancipating her after the death of his wife Judith, who was dead previous to the institution of the suit, and who previous to, during and subsequent to her mar. riage with Morton, had Betty in possession for sixteen or eighteen years.
To rebut this claim, the defendant proved that Mrs. Morton obtained Betty from her brother, Frank Moore, by purchase ; the terms of which are stated by one witness thus; “ so far as the title was involved, it was a conditional one, that if Mrs. Morton died without having a child, then Betty was to revert; that in the event of her having children, the title was then to be absolute, otherwise not, but to terminate at her death without issue.” Another witness stated it thus: — “ that when Frank Moore first offered to his sister Judith the girl Betty, upon the condition that she was to return to him, provided Judith died without issue, she refused to take her upon such condition, but afterwards did take her upon that condition.” A third witness stated it thus: — “ on *236 condition that Betty and her increase were to return Frank Moore, provided Judith had no child to heir them.” It was further proved, that Judith died without issue.
If property be given or sold, with a condition,that itshall revert upon a contingency, Sy if the reservation be valid, the statute of limitations does not commence running, in bar of the right of the reversioner, until the contingency happens.
If a gift, or sale, of a slave, or Other chattel, be made upon condition, that if the purchaser die without issue, the chattel shall revert, or pass to a third party, the condition is void— and the entire property vests absolutely in the first donee.
This state of case appearing on the trial, the court instructed the jury, in effect, that upon the whole proof, Betty had no right to freedom.
Did the correctness of this instruction depend upon the effect of the statute of limitations exclusively,which appears to have been principally relied on in the circuit court, as it was in the argument here, we should be in* dined to concur with the circuit court, and approve the finding of the jury for the defendant. For, besides the evidence being inadequate to shew an adversary holding by Morton, if the terms of the sale reserved a valid re-versionary interest in the slave to Moore, after Mrs. Morton’s death, his cause of action did not accrue, nor could the statute, therefore, have commenced running until her death.
There is no discrepancy in the proof as to tlie terms of sale. According to the testimony of each of the three witnesses, it was a' tranfer, by parol, of the absolute right to Betty, on condition that Judith Moore hada child, or children ; and on failure of that condition, that, at Judith’s death, Betty should revert to Frank Moore. This reservation of a reversionary right to the vendor, can have no further or greater efficacy than if it had been granted by the terms of sale to a third person. The determination of the case depends upon the validity of any such reservation or limitation.
At common law, a gift to a man and the heirs of his body, was an estate upon condition, that it should revert to the donor, if the donee had no heirs of his body ; but if he had, it should then remain to the donee. It was, therefore, called a fee simple on condition that he had issue. 2 Black. Com. 110. The statute de donis after-wards turned this estate upon condition, when it was created in the conveyance of real estate, into fee-tail. As to personalty it still remains a fee on condition. According to the earlier decisions, whilst chattels were of little estimation, a grant of personalty for life, carried *237 with it the whole estate. But the law, as it has been settled in more modern times, allows the limitation of a remainder after a life estate in personalty. And it has even been allowed by executory devise, or conveyance .in trust, to create what is, to some extent, in effect, the same as a conditional fee, or estate tail, in such property, without thereby passing the absolute and entire interest to the first taker. This, however, is expressly confined to those two excepted modes of creating an estate in personalty, For it is well settled, that, (with the exception of an annuity,) wherever, by any of the ordinary modes of conveyance, an estate in fee conditional, or fee-tail, is granted in or out of personalty, that it passes the whole C7 x j x estate to the grantee or first taker, and consequently, all further limitations or reserversions are null and void. See Har. Co. Lit. 20 a. Fearne 460, 463. Roper on Legacies, 303. Christain's Black. 113. So that properly speaking, there can be no such estate in personalty as a fee simple on condition of having issue, or fee-tail, but all such estates when attempted to be created, carry the whole interest absolutely.
tation of a re-{¡fe^estate^in personalty ; or edjrfeffect, executory de-anee in trust'— tho’notby the ordinary modes 0f conveyance.
The application of this doctrine to the case before us, requires no elucidation. Nor can any restriction of its operation be found in the act of 1798, converting slaves into real estate; for the thirty third section of that act declares, that no remainder in a slave shall be limited, otherwise'than the remainder of a chattel personal, by the rules of the common law ; and the act of 1796 — 1 Dig. 314, converts all estates tail in land, of slaves, into estates in fee simple.
The conclusion is, that the purchase made by Judith Moore, according to the terms thereof, as proved by the defendant,- vested in her the absolute right to Betty ; which passed, on the marriage, to Morton ; and Betty was emancipated by his will.
The judgment must be reversed, with costs, and the cause, remanded, with directions to set aside the verdict, and for further proceedings consistent herewith.