## CONNOR vs. TRAWICK'S ADM'R.

37 289
121 170

[DETINUE FOR SLAVE.]

1. *Delivery, or writing under ·seal, necessary to constitute gift.*—At common law, in the absence of an actual delivery of the property itself, a gift could only be'consummated by deed, or other instrument under seal'; not because the delivery of the deed was held a symbolical delivery of the property, but on the principle of estoppel.
2. *Presumed existence of common law in other States.*—In the absence of evidence to the contrary, the courts of this State will presume that the common law prevails in other States.

APPEAL from the Circuit Court of Marengo.

Tried before the Hon. C. W. RAPIER.

THIS action was brought by Burwell T. Connor, an infant, suing by his next friend, against the administrator of Ignatius A. Trawick, deceased, to recover a slave named Toby, which the plaintiff claimed under an alleged gift from his

grandfather, Burwell Trawick, deceased, as evidenced by an instrument of writing in the following words :

"Know all men, by these presents, that I, Burwell Trawick, of the county of Attala, State of Mississippi, for divers good causes and considerations me thereunto moving, have this day given and conveyed unto my grand-daughter, Isabella Porter, my boy Ned, also one feather-bed, and all the furniture thereto belonging ; and I also give and convey to my grand-daughter, Susannah Porter, my boy Martin, and one feather-bed and furniture ; and, third, I give and convey to my grand-son, Burwell T. Connor, my boy Toby, and watch ; saving to myself, however, the use and benefit arising from all of my said property during my natural life ; and I hereby appoint E. M. Wells, esquire, my trustee and guardian, to manage and control the above-mentioned property, until said children, become of age or marry ; giving unto each negro, at the end of the year, the sum of five dollars, for the proceeds of their labor. April 25, 1851.

"B. TRAWICK."

"We have this day witnessed the delivery of the negroes mentioned above, April 25, 1861." (Signed by William Holland and Jno. T. Holland.)

This instrument was executed in the State of Mississippi, on the day of its date, and was delivered by said B. Trawick to E. M. Wells, in the presence of William Holland and Jno. T. Holland. William Holland testified, that, at the time of its delivery, "B. Trawick called up the negroes, and told them what he had done, and that Judge Wells was the trustee, and would take charge of them after his death." Jno. T. Holland testified, "B. Trawick then called up the negroes, and explained to them what he had done—that he had given Ned to Isabella Porter, Martin to Susannah Porter, and Toby to Burwell T. Connor ; and told them that 'Judge Wells would see to them,' or words to that effect." E. M. Wells testified, "B. Trawick then called up the negroes, and told them, that he had given Ned to Isabella

Porter, Martin to Susannah Porter, and Toby to B. T. Connor, and had appointed me his trustee and guardian to see to them; and I then told them to go and attend to their old master's business." The slave Toby continued in the possession of said Burwell Trawick up to the time of his death, which occurred in March, 1853; and, on the final distribution of his estate, was allotted to Ignatius A. Trawick, the defendant's intestate, who was his son.

"On this evidence, the court charged the jury, 1st, 'that the instrument under which the plaintiff claims the slave, is not a deed, and has not the effect and operation of a deed in this case;' 2d, 'that if said instrument was executed by B. Trawick, and by him delivered to Wells, such delivery would not be sufficient, of itself, to pass title from Trawick by way of gift, unless the slave was also delivered;' and, 3d, 'that to constitute a valid gift, there must have been some ostensible act done to signify a transfer of the possession of the slave, and, connected therewith, a present intention, on the part of the donor, to pass the dominion over the property from himself to the donee, or to some one else for him.' The plaintiff excepted to each of these charges, and then requested the court to instruct the jury, 'that if they believed, from the evidence, that B. Trawick intended to give the boy Toby to the plaintiff, and, in order to carry out this intention, wrote the instrument read in evidence, and called on persons present to witness its execution, and signed it in their presence, and delivered it to E. M. Wells, thereby intending, at the time to convey said boy to the plaintiff; and that the boy Toby was then present,—then the jury must find for the plaintiff.' This charge the court refused to give, without qualification; and the plaintiff excepted to its refusal."

The charges given by the court, and the refusal of the charge asked, are now assigned as error.

BROOKS & GARROTT, for appellant.—A gift of personal chattels is the act of transferring the right and possession of them, whereby one man renounces, and another acquires,

title and interest therein. Delivery is essential to the validity of a gift; but it needs not to be actual—it may be constructive, or symbolical. The delivery of a deed is a constructive delivery of the property, and passes the title and dominion to the donee.—*McCutchen v. McCutchen*, 9 Porter, 650 ; *Adams v. Broughton*, 13 Ala. 731 ; *Newman v. James & Newman*, 12 Ala. 29. But it is not necessary that the instrument of writing should be under seal, though it usually has that form ; and the courts, in speaking of such constructive delivery, generally use the term *deed*, because it is the appropriate description of the particular instrument before them. At one time, a deed was regarded as an instrument of unusual sanctity and solemnity ; it was presumed to be founded upon a valid consideration, and its consideration could not be impeached at law. But the old doctrine has been greatly modified in modern times. In reference to personal property, a deed has no more potency to pass title than an unsealed writing. Blackstone says, that a gift may be made, "either in writing, or by word of mouth," (2 Bla. Com. 356 ;) and it is not intimated that the writing must be under seal. A gift of a chattel, "by deed or writing," is good, without an actual delivery of the property.—*Flowers'* case, Noye's R. 67 ; *Irons v. Smallpiece*, 2 Barn. & Ald. 551 ; *Carradine v. Collins*, 7 Sm. & Mar. 428.

S. F. HALE, *contra.*—All the authorities lay down the rule, that a gift is not effectual to pass property, unless it is accompanied by actual delivery, or consummated by deed. Here, the writing was not under seal ; and there could be no actual delivery of the slave, because, by the terms of the instrument, the donee was not to have possession until after the death of the donor.

R. W. WALKER, J.—It has long been understood to be the law, that, in the absence of an actual delivery of the property, a gift can only be made by deed, or other instrument under seal. In the present case, there could be no

actual delivery of the property, because, by the terms of the alleged gift, the donee was not to have possession until after the death of the donor; and as the writing relied on is not under seal, we must decide that there was not a valid gift, unless we are prepared to repudiate the rule above stated, and to hold that a gift may be consummated, as well by the delivery of an unsealed writing declaring its terms, as by the delivery of the property itself, or of a deed or other instrument under seal.

It is argued, that a deed effectuates the gift, because the delivery of the deed is but a symbolical delivery of the property; that, as the title to personalty passes by unsealed writing, as well as by deed, there is no good reason why the former, as well as the latter, should not operate a constructive delivery of the property; and that, if there ever was any substantial ground for a distinction between the two classes of writings, as the means of consummating gifts, it no longer exists, and the distinction has thus become obsolete. It is a mistake, however, to suppose, that the reason why the delivery of a deed, declaring the gift, has the same effect, as between the parties, as the actual delivery of the property, is because the delivery of the deed is but a symbolical delivery of the thing. That would not have been so in the present case, if the donor had delivered a deed, instead of an unsealed writing; for, by the terms of the gift, no immediate delivery of the property was intended, but the donor was to retain the possession and control of it so long as he lived.

It is rather upon the principle of estoppel, that, for the purpose of consummating a gift, the delivery of a deed is as effectual as the delivery of the property. According to the ancient common law, the seal was invested with great solemnity and force. "Words pass from man to man, lightly and inconsiderately; but, where the agreement is by deed, there is more time for deliberation. For, when a man passes a thing by deed, first there is the determination of the mind to do it, and upon that he causes it to be written, which is one part of the deliberation; and afterwards he

puts his seal to it, which is another part of deliberation; and lastly, he delivers the writing as his deed, which is the consummation of his resolution. So that there is great deliberation used in the making of deeds; for which reason, they are received as a *lien* final to the party, and are adjudged to bind the party, without examining upon what cause or consideration they were made. As if I by deed promise to give you £20, here you shall have an action of debt upon this deed, and the consideration for my promise is not examinable; it is sufficient to say it was the will of the party who made the deed."—Plowden, *arguendo*, in *Sharington v. Stratton*, Plowd. 308.

Although it is true that, in modern times, the seal has been stripped of much of its ancient force, the doctrine of estoppel by deed is still maintained. Hence, where a gift of personal property is made by deed, the delivery of the deed transfers the right to the property; for the reason, that the form of the instrument imports a consideration for the transfer, and the maker of the deed is estopped thereby from asserting that he has not granted to the donee a power of control and dominion over the property conveyed by the deed; and this irrevocable transfer of dominion is the "one thing needful" to perfect a gift. "The deed does not operate on the property, in virtue of its being a symbol of it, but because it carries on its face an acknowledged right in the grantee to control it. A symbolical delivery of one thing, in the name of another, is no delivery of the latter. The argument of Lord Chancellor Hardwicke, in *Ward v. Turner*, (2 Vesey, Sr. 431,) is conclusive upon this point. But, if the key be delivered of a desk, in which a paper or a jewel is contained, the paper or jewel is thereby delivered; be who has the key, has the dominion of it. A deed stands upon analogous grounds, and whenever the deed is effectually executed and delivered, it draws to the grantee the thing according to its terms."—*Jaggers v. Estes*, 3 Strob. Eq. 380.

But, unless the donor has executed a deed, whereby he is estopped from saying that the property has not passed

to the donee, no mere verbal or written declaration will consummate the gift ; the doctrine of estoppel does not apply to such a case ; and unless there be a deed, or a contract supported by a valuable consideration, the proprietary right of control cannot pass without a delivery of the property. Hence, a parol declaration of gift (whether verbal, or by unsealed writing) stands upon the footing of a mere promise to give, and is void in law.—See Addison Contr. 12, 27; 1 Parsons Contr. 201 ; Williams on Pers. Prop. marg. pp. 33–5 ; *McCutchen v. McCutchen,* 9 Porter, 650, 656–7 ; *Irons v. Smallpiece,* 2 B. & Ald. 551 ; *Miller v. Anderson,* 4 Rich. Eq. 1 ; *Busby v. Byrd, ib.* 9; *Jaggers v. Estes,* 3 Strob. Eq. 379; *Morrow v. Williams,* 3 Dev. 263 ; *Thompson v. Thompson,* 2 How. Miss. 737 ; *Barker v. Barker,* 2 Gratt. 344; 11 Leigh, 439 ; 15 Ala. 406 ; 18 Ala. 822 ; 17 Ala. 772 ; 1 Burrill's Law Dict. (2d ed.) p. 686.

What we have said may serve to indicate the origin of the distinction between deeds, on the one hand, and verbal declarations, or unsealed writings, on the other, as the means of consummating gifts. Whatever the original reasons for the distinction, it is well established in the common law ; and forming, as it does, a rule of property, we are not disposed to disturb it. If asked why we would decide, in the absence of a statute, that land could not be conveyed by an unsealed instrument, as well as by deed ; or why will not a verbal declaration of gift, without delivery, be effectual to pass the title to personalty ; we might find it difficult, at the present day, to give any better answer than this—The law is so settled, and it is only "with trembling hands" (according to the maxim of Montesquieu) that courts should venture to change settled laws.

[2.] The writing relied on in this case was executed in Mississippi ; and there being no evidence to the contrary before us, we must presume that the rule of the common law prevails in that State.

Whether our legislation has wrought such changes in the principles of the common law, as would enable us to hold

that a gift of personal property may be made, in this State, by an unsealed writing, without delivery of the property, we need not inquire, and do not decide.

Judgment affirmed.