# Winston *v.* McAlpine.

*Petition for Revivor of Decree in Chancery.*

1. *Revivor of decree; conclusiveness.*—On bill of revivor, or petition to revive a decree in chancery, the matters litigated in the original suit can not be re-tried, except so far as they remain undecided.

2. *Decree against married woman, or her statutory separate estate.*—Although a personal decree can not be rendered against a married woman, on a cause of action accruing during coverture, yet her coverture does not ·prevent the rendition of a decree against lands descended to her, for contribution to the other heirs on account of a debt of the ancestor which they have paid.

3. *Liability of lands descended, for debt of ancestor ; contribution among heirs.* When lands descended are divided among the heirs, leaving debts unpaid, the creditors have an undoubted right to proceed against them in equity ; and if one or more of the heirs discharge this common liability, by agreement with the others, or pay more than their proportionate share, they are subrogated to the creditors' rights to proceed against the lands of the others.

APPEAL from the Chancery Court of Greene.

Heard before the Hon. S. H. SPROTT, as special chancellor, selected by the parties on account of the incompetency of Chancellor DILLARD, who was related to some of the parties.

In this case, a *scire facias* was sued out, and a petition filed, by Mrs. M. C. Jones, as the executrix of the last will and testament of her deceased husband, Joel W. Jones, by which she sought to revive a decree rendered by said court on the 7th June, 1870, against Mrs Mary V. Winston and her husband. Mrs. Winston demurred to the petition and *scire facias*, and she now appeals from the decree of the special chancellor overruling her demurrer. The opinion of the special chancellor, which this court adopts, and which states all the material facts, is as follows :

" This cause comes on to be heard, upon the *scire facias*, petition, and amended petition of M. C. Jones, as executrix of Joel W. Jones, deceased, to revive a decree of this court rendered on the 7th day of June, 1870, in favor of Virginia McAlpine *et al.*, against John J. Winston and Mary V. Winston, and demurrers to the petition and amended petition. The petition seeks to revive the decree in the name of the original complainants, or such of them as are alive, for the benfit of the estate of said Joel W. Jones. In view of the points raised, and the references made to the original bill and decree, by the counsel on both sides, it becomes necessary to examine that bill and decree.

" It seems that Solomon McAlpine was indebted to one Shelton in a large sum of money, and he died about the 24th January, 1861. Virginia McAlpine, his widow, qualified as the administratrix of his estate. Shelton, or his agent, refused to receive Confederate currency, in payment of said indebtedness. The administratrix divided the personal property among the heirs at law and distributees of said decedent, with the understanding that they were to contribute to the payment of the Shelton debt, if it had to be paid ; but no refunding bond was taken by her. In 1865, the lands were divided among the heirs at law, of whom Mary J. Winston was one, by order of the Probate Court of Greene county, and on the petition of said John J. Winston and Mary V., his wife. Subsequent to this, the Shelton debt was compromised, or settled, by the payment of the face of the note ; all the heirs contributing thereto in full, of their *pro-rata* shares, except the said John J. Winston and Mary V., his wife, who paid only a part of their *pro-rata* share, the *deficit* being made up by the other heirs ; and said debt, as to the principal, or face thereof, was thus paid in full and settled. On the 16th day of November, 1869, Virginia McAlpine, Solomon Q. McAlpine, Joseph W. Taylor, as administrator of Helen Taylor, deceased, W. S. Bird, Susan E. Bird, his wife, and W. S. Bird as administrator of Agnes E. Bird, deceased, filed their bill in this court, against said John J. Winston

and Mary V., his wife, asking for a decree against them, and for a sale of the lands of the said Mary V., to satisfy the amount paid by them on her *pro-rata* share of said debt. On the 6th June, 1870, a decree was rendered in said cause, granting the relief prayed, and referring the same (?) to the register, to ascertain and report the amounts due from the defendants; and on the 7th June, 1870, a decree was rendered for the amount so ascertained and reported, and in default of the payment of the same, directing the register to sell the lands of the said Mary V. to satisfy the same.

" This is a brief statement of the material points (?) as presented in the bill and decree. It seems from the petition filed on the 28th November, 1879, that on the 27th day of June, 1870, the decree rendered in this cause was transferred and assigned to John A. Winston & Co., a firm composed of John A. Winston and Joel W. Jones; and that on the 5th February, 1872, the sum of $998.50 was paid on said decree.

" It is argued for the defendant, that the decree in this case is null and void, being against the separate statutory estate of Mrs. Winston, and that it can not be revived. This might be true, if it were an ordinary debt. But Mrs. Winston took the estate, charged with the liability, and subject to the debts of the ancestor. Neither is the case affected by the fact that no refunding bond was taken. The creditor of Solomon McAlpine could have pursued the property in the hands of any of the heirs at law. Again, I do not think that I can question or look into the decree made in this cause. If it was erroneous, it could have been corrected by appeal to the Supreme Court.

" The defendant insists, also, that the payment to Shelton being made voluntarily by the heirs of Solomon McAlpine, without any request on the part of Mrs. Winston and her husband, the debt thereby became extinguished, and there was no liability on the part of Mrs. Winston to pay the same. If Shelton had filed a bill against the heirs of said McAlpine, or had sought to coerce the payment of his debt out of the assets in their hands, would not Mrs. Winston have been liable equally with the others? Could Shelton have proceeded against one, or a part of the heirs, and not against the others? Undoubtedly he could. But, if one of the heirs, in order to save the costs and expense of litigation, comes forward, and pays off the debt, would not a bill lie for contribution? I think it would, most clearly. 'If a man, owning several acres of land, is bound in a judgment, or statute, or recognizance, operating as a lien on the land; and he afterward aliens, one acre to A, another to B, another to C, &c.; then, if one alienee is compelled, in order to save his

[Winston v. McAlpine.]

land, to pay the judgment, statute, or recognizance, he will be entitled to contribution from the other alienees.'—1 Story's Equity, § 477. I can see no difference, in principle, between such a case, and the one here under consideration. It is true, the words '*compelled to pay*' are used. In the present case, the heirs of McAlpine could, and doubtless would have been, compelled to pay Shelton's debt. 'The remedial justice of courts of equity, in cases of apportionment and contribution, is so complete, and so flexible in its adaptation to all the particular circumstances and equities, that it has, in a great measure, superseded all efforts to obtain redress in any other tribunals.'—1 Story's Equity, § 505.

"The only other question, necessary to consider, is, whether the proper parties are before the court; and whether the decree can be revived in the name of the original parties complainant, or their representatives, for the benefit of the petitioner. In the case of *State, ex rel. Waring v. Mayor and Aldermen of Mobile* (24 Ala. 703), which was a petition to revive a decree of the Chancery Court, the Supreme Court said : 'As to the right of the petitioner to prosecute the decree, is only necessary to observe, that the present proceeding is in the nature of a bill of revivor, to carry a decree into execution ; and it is not necessary, in all cases, that bills of this character should be filed by the same persons who were parties to the original decree : it may sometimes be exhibited by one outside of the record, but who claims in a similar interest.' The petition and *scire facias* are simply for the purpose of bringing the party into court, where they may have an opportunity of pleading, and showing cause, if any, such as release, or satisfaction, why the decree should not be revived. The defendants can not possibly be injured by a revivor in the name of the original complainants, any more than by reviving in the name of the petitioner. But one execution of the decree can be had, no matter in whose name revived. Section 3178 of the Code (1876) does not, I think, apply to the transfer or assignment of decrees in chancery, but to judgments in civil cases. At common law, *choses* in action were not assignable ; yet equity would protect the assignment, as much as the law would that of a *chose* in possession. Our statutes, however, authorize the assignment of *choses* in action ; and it will be readily perceived, by an examination of section 3178, that it was intended to apply to judgments in civil actions. This section is found in Part 3, title 1, under the head 'Proceedings in civil actions in Courts of Common Law' ; and it relates exclusively to civil matters, referring only occasionally to proceedings in chancery ; as in section 3174, where it is permissive, and provides

[Winston v. McAlpine.]

for the revival of a judgment or decree, in the Circuit, Chancery, or Probate Court, by *scire facias.*

"It results from these views, that the demurrers will have to be overruled, at the cost of the demurrant. But, inasmuch as the defendant is entitled to a day in court, in order to deny, or further plead to the petition, this conclusion does not necessarily dispose of the case ; and it is ordered, that the defendant be allowed thirty days from the filing of this decree, to answer or plead to said *scire facias* and petition."

From this decree Mrs. Winston appeals, and here assigns as error the overruling of the demurrers.

E. MORGAN, with CLARK & McQUEEN, for appellant.

SNEDECOR, COCKRELL & HEAD, contra.

STONE, J.—The present proceeding may be assimilated to a bill of revivor. In such case, it is not, as a rule, permissible to re-try the claims set up and litigated in the original suit, except to the extent they remain undecided.—Story's Eq. Pl. §§ 376, 370 *a* ; *State, ex rel. v. Mayor*, 24 Ala. 701. We approve and adopt the decree of the special chancellor, rendered in this cause. Probably, no personal decree should have been rendered against Mrs. Winston, she being a married woman at the time complainants' right accrued ; and we are not sure the special chancellor intended his decree should so operate. We do not, however, doubt that Shelton, the creditor, had a right to go against the lands descended, for the payment of McAlpine's debt ; and that upon the undisputed facts in the record of the original suit, brought to our notice in this record, the complainants were subrogated to his rights. There is no question here of voluntary payment of the debt of another, without request. The liability rested alike on the property of each ; the promise and obligation to pay were as much the obligation of one as the others—they imposed a joint duty ; and when, in such case, one or more of the obligors discharges the common liability after maturity, the law raises the duty and obligation to make contribution, and to repay the proportionate share due from the defaulting co-obligors.—*Stalworth v. Preslar*, 34 Ala. 505. While there is no authority to order a money execution against Mrs. Winston, there can be no question of the right to order a sale of the lands, if the money is not paid.

The decree is affirmed.